

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

HDM
F. #2023R00121

January 31, 2025

By ECF
The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Hyun W. Lee
      Criminal Docket No. 23-465 (PKC) (CLP)

Dear Judge Chen:

   The government respectfully writes in advance of the February 4, 2025, sentencing of defendant Hyun W. Lee, also known as Michael Lee (the "defendant"). For the reasons set forth below, the government respectfully submits that a sentence of 60 months imprisonment, which is below the applicable Guidelines range of 78 to 97 months imprisonment,[1] would be sufficient but not greater than necessary to serve the purposes of sentencing.

   I. Background and Offense Conduct

   This case arises out of a fraud scheme in which the defendant, a disbarred attorney, embezzled millions of dollars that he had agreed to hold on behalf of clients or their counterparties. The defendant was an attorney licensed by the State of New York and was admitted to practice on September 17, 2003. (PSR ¶ 4.) The defendant maintained an office located in Flushing, New York, where he engaged in the practice of law, including representing buyers and sellers in connection with the purchase and sale of real property. Id.

   In an opinion issued by a panel of the Supreme Court, Appellate Division, Second Department (the "Second Department") on August 21, 2019, the defendant was suspended from the practice of law in the State of New York, based upon a finding that the Grievance Committee for the Second, Eleventh, and Thirteen Judicial Districts (the "Grievance Committee") had demonstrated the defendant posed an immediate threat to the

---

[1] The defendant incorrectly states that the Guidelines range for an offense level of 28 is 74 to 87 months imprisonment. (Def. Mem. 2, ECF No. 28).

public interest by engaging in a pattern and practice of misappropriating client funds deposited into his attorney escrow account. (PSR ¶ 5.)

In a per curiam opinion issued by the Second Department on March 11, 2020, the defendant was disbarred as a result of charges by the Grievance Committee alleging that he (i) engaged in a pattern and practice of misappropriating client and third-party funds with respect to seven client matters; (ii) breached his fiduciary duty, as evidenced by a negative balance in his escrow account on 22 occasions; engaged in a pattern and practice of issuing escrow checks without corresponding funds on deposit in that account; (iii) commingled personal funds with client funds in his escrow account; and (iv) failed to maintain the required bookkeeping records in relation to his escrow account. (PSR ¶ 6.)

The opinion also directed the defendant to deist and refrain from (i) practicing law in any form, either as principal or as agent, clerk, or employee of another; (ii) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority; (iii) giving to another an opinion as to the law or its application or any advice in relation thereto; and (iv) holding himself out in any way as an attorney and counselor-at-law. (PSR ¶ 7.)

Between February 2018 and May 2023, the defendant engaged in a scheme to defraud clients and third parties by inducing them to give him funds for the purchase of real estate based upon misrepresentations that, among other things, the defendant would release funds entrusted to him and deposited into his escrow account in connection with the closing of real estate transactions. (PSR ¶ 8.) In particular, the defendant misappropriated the funds entrusted to him to deposit and hold in his escrow account by using the funds for his own benefit, including gambling at casinos and for expenses at a restaurant that he partially owned. Id. In addition, between August 2019 and May 2023, the defendant misrepresented that he was an attorney who was authorized to represent clients, including in connection with the purchase and sale of real estate, and to receive and hold funds in his escrow account in connection with real estate transactions. Id. In reality, the defendant was suspended and subsequently disbarred in March 2020 and was prohibited from engaging in the practice of law in the State of New York, including accepting funds from clients and third parties. Id.

In furtherance of his fraudulent scheme, the defendant misled clients about the status of funds held in his escrow account by, among other things, fabricating documents to lead them to believe that their funds were secure. (PSR ¶ 9.) For example, on February 7, 2023, the defendant provided the son of one of his clients with a spreadsheet purporting to show the amount of funds held in his escrow account. Id. That spreadsheet showed a current balance in his escrow account of approximately $2,966,184.59. Id. However, the defendant falsified the balance information—in reality, in February 2023, the escrow account shown in the spreadsheet had a balance of no more than approximately $25,000. Id.

After the defendant misappropriated and spent funds that had been entrusted to him, he failed to honor requests by clients and third parties to release funds from his escrow account in connection with real estate transactions for which the funds were

originally deposited. (PSR ¶ 10.) Specifically, the defendant falsely claimed that he was in the process of working out an equitable method of distributing funds remaining in his escrow account among those to whom money was owed, when in reality there was virtually no money left to distribute. Id.

    II.    The Defendant's Plea and Applicable Guidelines Range

On December 1, 2023, the defendant pleaded guilty before Your Honor, pursuant to a plea agreement (the "Plea Agreement") to the sole count of an information charging him with wire fraud, in violation of Title 18, United States Code, Section 1343. See Information, Dkt. #5. The Plea Agreement stipulated that the defendant's base offense level was 7, pursuant to U.S.S.G. § 2B1.1(a)(1), and that a 16-level increase was warranted because the loss amount exceeded $1,500,000 but was less than $3,500,000. See Plea Agreement, at ¶ 2. Because the present offense resulted in substantial financial hardship for at least five victims, but not more than 25 victims, a four-level increase was warranted, pursuant to U.S.S.G. § 2B1.1(b)(2)(B). Id. In addition, because the offense involved a violation of a prior, specific judicial or administrative order, injunction, decree, or process, a two-level increase was warranted, pursuant to U.S.S.G. § 2B1.1(b)(9)(C). Id. Further, because the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the present offense, a two-level increase was warrant, pursuant to U.S.S.G. § 3B1.3(b). Id. Moreover, because the defendant clearly accepted responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction was warranted, pursuant to U.S.S.G. § 3E1.1(a). Id. Finally, because the government was notified in a timely manner of the defendant's intention to enter a plea of guilty, a one-level reduction was warranted, pursuant to U.S.S.G. § 3E1.1(b), for a total offense level of 28. Id.

Because the defendant is in Criminal History Category I, the applicable guidelines range is 78 to 97 months imprisonment. Id. The PSR calculated the same offense level, criminal history score, and applicable guidelines range as the Plea Agreement. (PSR ¶¶ 21-24, 26, 30-32, 35, 70). Probation cited no factors that warrant a departure or variance from the applicable guidelines range. (PSR ¶ 85).

    III.    Discussion

        A.    *Applicable Law*

Following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the guidelines still provide strong guidance for sentencing courts. Although Booker held that the guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). Following that calculation, however, a sentencing judge must consider the seven factors outlined in Title 18, United States Code,

3

Section 3553(a), when imposing a sentence. They are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). See Gall, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. *A Sentence of 60 Months' Imprisonment Is Appropriate*

In this case, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment favors a sentence of 60 months, which is below the Guidelines range of 78 to 97 months and takes into account that the defendant has a gambling addiction, and that the defendant proffered immediately and accepted responsibility for his actions. Nevertheless, the defendant abused his position of trust as an attorney to misappropriate over $3 million. The entirety of that sum consists of funds that had been entrusted to the defendant by clients or third parties for safekeeping.

The defendant's criminal conduct was not attributable to a single error of judgment—the defendant misappropriated funds entrusted to him for safekeeping not once, but repeatedly over a period of more than five years involving more than a dozen victims. As a result, the defendant treated his attorney escrow account as his personal piggy bank. Notably, the conduct continued even after the defendant had already been suspended in 2019 and disbarred in 2020 for misappropriating client and third-party funds from his attorney escrow account. When confronted with questions about the status of the funds that had been entrusted to him, the defendant attempted to cover-up his criminal conduct with lies. For example, when questioned about escrowed funds, the defendant provided at least one of the victims with a spreadsheet that falsely reflected a multimillion-dollar balance in his escrow account. In truth, the account contained no more than approximately $25,000—the rest had already been pilfered by the defendant. Although the defendant, though counsel, was in contact with representatives of the Queens District Attorney's Office regarding his conduct,

4

this occurred only after one or more victims had either reported, or was about to report, the defendant's conduct to law enforcement.

Further, a sentence of 60 months is justified for the purpose of general deterrence. The defendant was able to commit his crimes because he held himself out as a trusted lawyer, including to clients within the Korean American community in Flushing, Queens. Clients, particularly those in immigrant communities that may have little experience with the U.S. legal system, place an enormous amount of trust in the hands of such individuals, and a substantial sentence would send the message that such trust should not and cannot be abused.

That said, the government acknowledges that there are some mitigating factors, including the fact that the defendant has a gambling addiction and that he has been remorseful about his actions.

In short, this is a rare case in which a practicing attorney breached the very trust placed in him by clients he was engaged to protect. It is hard to fully understand how this happened—how an apparently otherwise law-abiding individual engaged in such an egregious breach of trust. Because of the mitigating factors discussed herein, however, the government believes that a sentence of 60 months, which is below the guidelines range, is appropriate.

IV. Restitution and Forfeiture

In the Plea Agreement, the defendant agreed to forfeiture in the amount of $3,275,888.74 (the "Forfeiture Money Judgment"), in addition to the forfeiture of all right, title and interest in approximately $25,185.03 held in Metro City Bank account number 162000475 held in the name of the Law Office of Michael Lee & Associates, and all proceeds traceable thereto (the "Attorney Escrow Account"). In connection with acceptance of the defendant's plea, the Court entered a Preliminary Order of Forfeiture imposing the Forfeiture Money Judgment and directing forfeiture of the Attorney Escrow Account. See Preliminary Order of Forfeiture, Dkt. #16.

With respect to restitution, in accordance with the Mandatory Victims Restitution Act codified at Title 18, United States Code, Section 3663A, the government respectfully submits herewith a proposed order of restitution that sets forth the identities of the victims and their corresponding loss amounts for entry by the Court in connection with the defendant's sentencing (the "Proposed Restitution Order").[2] See 18 U.S.C. 3663A(a)(1).

---

[2] It should be noted that certain victims have applied for and received reimbursement for their losses from the Lawyers' Fund for Client Protection of the State of New York (the "Fund"). Accordingly, the Fund has been substituted in the Proposed Restitution Order for those victims who have received reimbursement for losses from the Fund. See 18 U.S.C. § 3664(j)(1).

V.  Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 60 months. The Government believes that such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Thank you for Your Honor's consideration of this submission.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Hiral D. Mehta
Assistant U.S. Attorney
(718) 254-7000

cc: Ed Kratt, Esq. (By ECF)